# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2014 IL App (1st) 122549

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMILLE BROWN, Defendant-Appellant. |
| | |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2549 |
| | |
| Filed | July 25, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's *pro se* postconviction petition was properly dismissed summarily at the first stage of the proceedings, since her allegations that her trial counsel was ineffective in failing to advise her of the State's 20-year plea offer and in failing to present evidence at the hearing on her motion to suppress that her statement to the police was the result of mental and physical coercion were not factually supported by affidavits, records or other evidence as required by section 122-2 of the Post-Conviction Hearing Act and there was no explanation as to why those required items were not presented. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CR-1766 (02); the Hon. John Joseph Hynes, Judge, presiding. |
| | |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Christopher Kopacz, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan Spellberg, Matthew Connors, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1   Defendant, Jamille Brown, appeals from the order of the circuit court of Cook County summarily dismissing her *pro se* postconviction petition at the first stage of postconviction proceedings.[1] Defendant was convicted by a jury of aggravated vehicular hijacking, armed robbery, and first-degree murder. The trial court sentenced defendant to a total of 43 years' imprisonment in the Illinois Department of Corrections. This court affirmed defendant's conviction and sentence on direct appeal. *People v. Brown*, 2011 IL App (1st) 093619-U. Thereafter, defendant filed a *pro se* petition for postconviction relief alleging, *inter alia*, ineffective assistance of trial counsel. The trial court summarily dismissed the petition. Defendant appeals only from the dismissal of that portion of the petition alleging ineffective assistance of trial counsel for failing to (1) transmit the State's 20-year plea offer to her; and (2) present evidence at the motion to suppress hearing that her statement was a product of mental and physical coercion. We determine that the petition does not meet the pleading requirements of section 122-2 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2 (West 2012)) and, thus, we affirm.

¶ 2                               BACKGROUND
¶ 3   Defendant's conviction arose from the December 22, 2005, murder of Abimola Ogunniyi, who was shot in the leg by codefendant Elliott Peterson while Peterson, Joyce McGee (another codefendant), and defendant were hijacking his vehicle. On January 17, 2006, defendant was charged by indictment with multiple counts of first-degree murder, felony murder, armed robbery, aggravated vehicular hijacking, armed violence, aggravated robbery, vehicular hijacking, robbery, aggravated unlawful restraint, and unlawful restraint. The State

---

[1]We note that the caption of the matter on appeal and in the trial court spelled defendant's name "Jamille." In her videotaped statement, as well as in her *pro se* postconviction petition, defendant spelled her name "Jimille."

proceeded to trial only on the counts for first-degree murder, aggravated vehicular hijacking, and armed robbery.[2] For purposes of the current appeal, we will reiterate here only those facts which are germane to the issues raised in this appeal.

¶ 4                                        Motion to Suppress Statement

¶ 5        On March 3, 2009, defendant filed a motion to suppress her statement to police in which she asserted that: (1) her statements to police should be excluded because she was not given all of her *Miranda* rights, namely, she was not informed that she could request that questioning be stopped; and (2) her statement was a product of "psychological and mental coercion." On April 2, 2009, during a case status, the following exchange took place:

> "[Assistant State's Attorney]: Your Honor, I did have discussions with Counsel [defendant's trial counsel]. I did take a look at his Motion to Suppress Statements, which is the motion that's on file. It has been set down. I did indicate to him that I would need specificity as to Paragraph No. 4 [regarding the psychological and mental coercion]. He indicated he will go and interview his client and if there were any charges [*sic*], he would make me aware of them.
>
> THE COURT: All right. When do you think you will have that for me?
>
> [Defense Counsel]: Next week, Judge. Not a problem.
>
> THE COURT: I will give you ten days. If it's not done, let me know beforehand. I don't want to continue this again just for that reason. All right?
>
> [Assistant State's Attorney]: Yes, [Y]our Honor."

The trial court set the evidentiary hearing on defendant's motion to suppress for May 27, 2009.

¶ 6        A supplemental motion to suppress was filed on May 25, 2009. The motion set forth more facts regarding the alleged psychological and mental coercion. The motion expressly stated that the interrogating officers "yelled and raised their voices to the defendant, threatened the defendant with forcing her to have her baby in jail in unsanitary circumstances and threatened to charge her along with the co-defendants with the crime itself if she did not make a statement."

¶ 7        On the day of the hearing, the assistant State's Attorney informed the trial court that defendant's supplemental motion was not supported by an affidavit from defendant. The assistant State's Attorney requested defendant "be sworn today to those facts that are in \*\*\* [trial counsel's] motion." Trial counsel had no objection to defendant being "sworn in to the facts." Consequently, defendant swore "the contents of the motion to be true and accurate to the best of [her] knowledge." A suppression hearing was then held.

¶ 8        Trial counsel then presented his opening statement. Trial counsel asserted the motion raised two issues: (1) that defendant did not receive a complete set of *Miranda* warnings; and (2) that officers "overcame her desire not to talk about the case by threatening her [and] threatening to take her baby away from her." Trial counsel noted defendant was pregnant at the time the interrogation occurred. He further asserted the officers threatened defendant with

---

[2]Defendant and McGee were tried in simultaneous but severed proceedings; the defendant was tried by a jury; McGee elected a bench trial.

forcing her to deliver the baby in county jail in unsanitary conditions. The State presented no opening statement.

¶ 9 Thereafter, the State called its first and only witness, Lieutenant James Twohill of the Burbank police department. Twohill testified that on December 27, 2005, he was sergeant of Burbank investigations. At 12:53 p.m. that day, he and Lieutenant Tom Harold of the Evergreen Park police department conducted an interview of defendant. Twohill read defendant her *Miranda* rights from a preprinted card. Twohill further testified he did not inform defendant that she could stop the questioning at any time. Additionally, Twohill stated he did not raise his voice or yell at defendant and that he did not threaten defendant with losing her baby or tell defendant her baby would be born in jail in unsanitary conditions. Twohill testified defendant had no complaints regarding her treatment by police.

¶ 10 During Twohill's testimony, the State introduced into evidence defendant's December 27, 2005, videotaped interview. The State played a portion of the interview for the court wherein Twohill read defendant her *Miranda* rights. The videotape reflected that Twohill did not inform defendant that she could stop the questioning at any time. In addition, the videotape demonstrated defendant was not physically, psychologically, or mentally coerced and that the officers did not yell or raise their voices to defendant. Further, the officers did not make threats toward defendant's unborn child. At the beginning of the interview, the videotape demonstrates that defendant is asked, "Everything okay so far, you need a glass of water, you good?" To which she responds, "No, I'm okay." Near the end of the interview, when asked if she had been treated well, defendant responds affirmatively. The officers then asked defendant, "You have no complaints about the way anybody treated you here?" In response, defendant slightly bowed her head, shaking it from side-to-side indicating she did not have any complaints.

¶ 11 On cross-examination Twohill testified that he first met defendant on December 26, 2005, and spoke with her "very briefly" at the police station. Defendant was not a suspect and, therefore, was not informed of her *Miranda* rights at that time. Later that day, defendant accompanied Twohill and other unidentified officers to locate and identify "J-Mo," an individual who Twohill indicated was, at that time, a suspect in the matter. Defendant was in a van with the officers for "no more than an hour." Afterwards, the officers dropped defendant off at a family member's home.

¶ 12 Twohill further testified on cross-examination that on December 27, 2005, he "received information" that defendant had "voluntarily arrived" at the police station. Twohill "went there immediately to conduct the interview." Twohill, however, did not know exactly when defendant had arrived at the station. Twohill testified that Lieutenant Harold escorted defendant into the interview room, where Twohill was waiting outside. Twohill, Harold, and defendant walked into the interview room together, which is when the videotape begins. Prior to beginning the interview at 12:50 p.m., Twohill stated he had not spoken with defendant and neither had any other officers.

¶ 13 On redirect, Twohill testified that on December 27, 2005, he and Harold were at task force headquarters in Chicago Ridge when Harold received a telephone call that defendant was at the Evergreen Park police department. The two officers left immediately and arrived at the Evergreen Park police department "no more than 15 minutes" later. When they arrived at the Evergreen Park station, Harold went to get defendant, who was "waiting in a report

room away from the Detective Division." Twohill further testified that the first time he spoke with defendant on December 27, 2005, was when he commenced defendant's interview.

¶ 14 On re-cross, Twohill testified he did not see defendant walk into the station and believed "she arrived [at the station] when Lieutenant Harold received a phone call."

¶ 15 The State rested and defendant moved for a directed finding, which was denied by the trial court. The defense then rested without calling any witnesses. In closing arguments, defense counsel asserted that defendant did not receive "the final *Miranda* warning" and noted that the officers did not have defendant acknowledge each right individually. Defense counsel pointed out that the officers did not inform defendant that she did not have to answer further questions. Defense counsel further asserted that Twohill did not know what happened in the police station prior to defendant being interviewed. Defense counsel maintained this information was "important on the voluntariness issue" as it is "the State's burden to prove that none of this happened. That her voluntariness was not overcome." Defense counsel concluded that because the State did not offer any evidence as to what happened to defendant earlier in the day, the State did not meet its burden and, therefore, the motion should be granted.

¶ 16 In its closing argument, the State asserted that defendant was given all of her *Miranda* rights as shown in the videotape of the interview and from Twohill's testimony. The State further asserted that the December 27, 2005, interview was a "totally different phase to this investigation." In addition, defendant indicated on the videotape that she was treated well and there was no indication that she was not treated well by any officer at any time. Accordingly, the State requested that defendant's motion to suppress be denied.

¶ 17 After listening to the arguments of counsel, the testimony of Twohill, and viewing the videotape of defendant's interview, the trial court determined that "the *Miranda* warnings do not require any 'fifth' warnings with regards to the right to have questioning stopped at any time." The trial court also determined that defendant "clearly indicated that she understood all her rights and answered, yes, to that question." With regard to the voluntariness of defendant's statement, the trial court determined that the State met its burden of proof as the testimony of Twohill and the contents of the videotape demonstrated "she had no complaints about any one or the way she was treated there at the police station." Accordingly, the trial court denied defendant's motion to suppress.

¶ 18 Plea Offer

¶ 19 In the trial record, the first time a plea offer appears to be discussed was on June 10, 2009. Concerned about scheduling, the trial court inquired of counsel whether there had been any "negotiations between the parties."[3] Defendant's trial counsel stated, "I have started the negotiation process. I was thinking an early September trial, [Y]our Honor." The trial court then pressed trial counsel for a response as to whether defendant was willing to enter any plea negotiations or whether defendant would proceed to trial, noting this case had been pending since 2006. Trial counsel agreed with the trial court and indicated that he would speak with the State.

---

[3]As previously noted, the trial proceedings of defendant and codefendant McGee were conducted jointly.

¶ 20	At the next court date, July 7, 2009, defendant's trial counsel stated he was "in a position of setting the case down for trial." While discussing with counsel when to set the matter for trial, the trial court inquired as to whether "there had been any negotiations beforehand." Defendant's trial counsel indicated that the negotiations were ongoing. The assistant State's Attorney stated she telephoned counsel for defendant and codefendant McGee last week and left a message with an offer. The record does not indicate what the offer was. In response, the trial court set an interim status date of September 2, 2009, for status on plea negotiations. After counsel for defendant and McGee indicated their clients elected jury trials, the trial court set a firm trial date of October 5, 2009.

¶ 21	On September 2, 2009, the trial court inquired as to the status of any plea offers made to defendant and McGee. Defendant's trial counsel requested that counsel confer with the trial judge in chambers to discuss matters regarding scheduling. In response, the trial court inquired whether the matter could be worked out, to which defendant's trial counsel responded, "Well, that's one of the issues." The trial court asked whether counsel were requesting the court "to admonish your clients on a 402 Conference," to which trial counsel for McGee responded, "It's not for the 402 conference." No other discussion was had on the record regarding any plea offer.

¶ 22	On October 5, 2009, prior to trial, the trial court inquired of trial counsel whether any plea offers had been made to defendant and McGee:

> "THE COURT: The first thing I want to go over with everyone is I know during the course of the pendency of this matter that the State has made certain offers, plea offers to the defendants. I just want to make sure under the case of People versus Curry that the defendants are aware of that and that they also are aware of the minimum and maximum penalties.
>
> So, State, were offers made to either or both defendants?
>
> [Assistant State's Attorney]: Yes, [Y]our Honor. As to both defendants an offer was made as to count–I'm sorry, Judge–as to Count 7 or 8 of 30 years.
>
> THE COURT: 7 or 8. That would be the–
>
> [Assistant State's Attorney]: Felony murder, armed robbery, felony murder, aggravated vehicular hijacking.
>
> THE COURT: And the offer was 30 years in the Illinois Department of Corrections?
>
> [Assistant State's Attorney]: Yes, [Y]our Honor, it was.
> ***
> THE COURT: All right, very good. And [defense counsel], is that your understanding of the offer by the State?
>
> [Defense Counsel]: It is, [Y]our Honor and I also communicated that offer to my client and she is also electing to proceed to trial.
> ***
> THE COURT: And Miss Brown, you have heard the representations of your attorney and the State's Attorney, is that your understanding of the offer that they made?
>
> DEFENDANT BROWN: Yes, sir."

The trial court then informed defendant of the minimum and maximum sentences she could receive. Defendant acknowledged she discussed sentencing with her attorney and understood the minimum and maximum sentences possible. The matter then proceeded to trial.

¶ 23                                        Evidence at Trial

¶ 24     This court previously detailed the evidence adduced at defendant's trial in our decision on direct appeal (*People v. Brown*, 2011 IL App (1st) 093619-U):

> "The evidence established that on December 22, 2005, the victim was dispatched to a nonexistent address on Chicago's southside, where he was unable to locate the caller in need of a taxi. Upon a second call to the dispatcher, the victim picked up three passengers, the defendant and her two codefendants. He was asked to take the three to the [*sic*] 96th Street and Pulaski.
>
> According to the defendant's videotaped statement, the three had agreed to rob an armored truck. In order to carry out their plan, they needed a vehicle to follow the armored truck before executing the robbery. They decided to hijack a cab to get the needed vehicle. Codefendant McGee called the livery service twice from her cell phone to arrange for a cab.
>
> Before the three left codefendant Peterson's apartment, the defendant saw Peterson arm himself with a weapon whose length she approximated by using her hands and noted it had wood on it. The victim was killed by a shotgun blast. When the cab reached the requested destination, McGee told the victim to go the rear of the residence by way of the alley. Once in the alley, Peterson put his weapon to the victim's head and had him get out of the car. The two exited on the driver's side of the car. Peterson instructed the victim to remove his clothing. In the meantime, the defendant and codefendant McGee also exited the car on the passenger side of the car. According to the defendant, the victim was taking off his blue jean jacket when 'all I heard was a pah.' The defendant stated Peterson shot the victim from a distance of about three feet and the victim fell in the snow.
>
> After clearing the cab of some items, the three reentered with the defendant driving. The defendant saw Peterson place the shotgun into what she described as a 'book bag.' The defendant identified a shotgun depicted in a photograph as the same gun she saw Peterson possess and use on the victim.
>
> The three abandoned the cab. Before leaving the cab, the defendant saw Peterson remove a 'black box' from the glove box and throw it away. Peterson also removed $200 to $300 from a wallet that was also in the glove box. The three walked in the direction of a bus stop on 95th Street near Christ Hospital. On their way, the defendant and McGee entered a Walgreen's store and purchased a candy bar with a $20 bill Peterson took from the wallet. A videotape of the purchase was shown to the jury. The three took a bus to Peterson's apartment.
>
> The defendant concluded her statement by acknowledging that she had been treated well by the police. The defendant reiterated that what she had stated was the truth. A detective responded: 'You know the only thing that upsets me? *** What really *** upsets me is this poor guy was laying there bleeding and the three of [you, not one of you] *** called 911.'

The jury found the defendant guilty of aggravated vehicular hijacking, armed robbery and first-degree murder. The jury specially found that first-degree murder was committed by the use of a firearm. Following the denial of posttrial motions, the defendant was sentenced to 28 years for first-degree murder with an additional 15 years based on the use of a firearm." *Id.* ¶¶ 5-11.

¶ 25                                                 Direct Appeal

¶ 26    On direct appeal, defendant raised three issues: (1) that she was deprived of a fair trial by the introduction of an autopsy photo; (2) prosecutorial misconduct; and (3) that her 43-year sentence was excessive. *Brown*, 2011 IL App (1st) 093619-U, ¶ 13. Both parties agreed that defendant's mittimus must be corrected to reflect a single conviction of murder. *Id.* We affirmed defendant's conviction and sentence. *Id.* ¶ 37. We concluded that the introduction of the autopsy photograph did not deprive defendant of a fair trial; that the claimed instances of prosecutorial misconduct did not rise to the level of second-prong plain errors; and that defendant's sentence was not excessive. *Id.* We further corrected the mittimus to reflect a single conviction of murder. *Id.*

¶ 27                              Defendant's *Pro Se* Postconviction Petition

¶ 28    In May 2012 defendant filed a *pro se* petition under the Act (725 ILCS 5/122-1 *et seq.* (West 2012)). Defendant's *pro se* petition alleged trial counsel was ineffective for several reasons, specifically, trial counsel failed to: (1) argue "the rule of accountability" and argue for a lesser included offense; (2) properly argue her motion to suppress statements; (3) file a motion to suppress evidence, namely, the contents of a backpack recovered from codefendant Peterson's apartment; (4) challenge a juror who spoke English as a second language; and (5) advise her of a 20-year plea bargain from the State. Defendant pursues only issues (2) and (5) in this appeal; that trial counsel rendered ineffective assistance of counsel by failing to present evidence and testimony that her statement to police was the product of physical and mental coercion and failing to inform her of an offer by the State to enter a 20-year plea bargain.

¶ 29    In support of her petition, defendant attached portions of the record of proceedings, excerpts of case law, three affidavits containing her own statements, and two letters–one from Cashmere Wallace, her brother, and the second from Camille Kershaw, her mother. In defendant's first affidavit she averred that before trial the State offered her 30 years, but that she turned the offer down. She further averred that the assistant State's Attorney then informed trial counsel that they would offer 20 years; however, trial counsel declined the offer because he assumed defendant would not accept the offer and believed he could win the trial. In her second affidavit, defendant stated that prior to trial her counsel informed her mother and brother of the 20-year plea deal offered by the State. She further asserted that trial counsel informed her mother that he "turned the deal down." In her third affidavit, defendant averred that she informed trial counsel that "two days prior to my confession, I was physically assaulted & threatened of my unborn child begin [*sic*] taken from me." She further averred that she "also informed my brother, Cashmere Wallace, that I was hit in my head while in the van with officers."

¶ 30    The letter from defendant's brother stated, "The [e]arly [m]orning of December 27, 2005 me, and my sister got high. [S]he confined [*sic*] in me that office [*sic*] Two[h]ill had slapped her in the head, while in the van." The letter was signed by Cashmere Wallace, but was not sworn or notarized.

¶ 31    The letter from defendant's mother stated, "December 27, 2005 I [d]rove [m]y [d]augher Jimille Brown to Evergreen police [s]tation, she was highly [i]ntoxicated with [m]arijuana, and [e]cstacy." The letter was signed by Camille Kershaw, but was not sworn or notarized.

¶ 32    On August 10, 2012, the circuit court summarily dismissed defendant's *pro se* petition in a written order. Regarding the claims at issue on appeal, the court first determined defendant's argument regarding trial counsel's failure to present evidence that her statements to police were the product of mental and physical coercion were "specifically contradicted by the record." The circuit court pointed out that the motion to suppress contained allegations regarding the verbal threats against defendant; however, defendant had sworn to the contents of the motion. At no point did defendant allege the interrogating officers physically assaulted her. In addition, the circuit court noted the allegations were specifically denied by the officer at the hearing. Further, in the videotaped confession defendant indicated she was treated well by the police and had no complaints about her treatment. The circuit court also referenced the fact that trial counsel argued defendant's statement was involuntary because she was threatened by the detectives in opening and closing statements during the hearing on the motion to suppress as well as in the motion for a new trial. The circuit court concluded this allegation was "completely contradicted by the record."

¶ 33    The circuit court also determined defendant's factual allegation that she received ineffective assistance of counsel due to trial counsel's failure to advise her of a plea offer by the State of 20 years in prison was contradicted by the trial record. The circuit court noted that the trial court asked the State whether any plea offers were made. In response, the assistant State's Attorney informed the court and the defense that in exchange for the defendant's plea to all counts, the State had offered the defendant 30 years in prison. The circuit court stated in its order that trial counsel acknowledged this offer and indicated he had communicated this offer to his client, but that defendant elected to proceed to trial. The trial court also asked defendant if this was her understanding of the offer and she indicated it was. The circuit court concluded the record "shows that the only offer ever made to the defendant was for 30 years in prison" and, therefore, "[t]he factual allegations in the petition are meritless."

¶ 34    This appeal timely followed.

¶ 35                                ANALYSIS

¶ 36    On appeal, defendant contends that her petition stated the gist of a meritorious claim that defense counsel rendered ineffective assistance at trial. Specifically, defendant asserts her trial counsel was ineffective for two reasons: (1) for failing to present evidence that her statement to police was the product of mental and physical coercion; and (2) for failing to inform her of a 20-year plea offer. We note that defendant makes no argument on appeal as to the other allegations in her petition.

¶ 37    In response, the State first addresses the sufficiency of defendant's petition, arguing: (1) that defendant forfeited her arguments regarding ineffective assistance of counsel because

they were not raised in her direct appeal; and (2) that the State asserts that defendant's petition lacked independent corroboration as required by section 122-2 of the Act. The State concludes that the insufficiency of defendant's petition is a basis on which to uphold the court's summary dismissal. In the alternative, the State addresses the substance of defendant's petition, asserting defendant's contentions are rebutted by the record as defendant was never offered a 20-year plea bargain and evidence was adduced at the evidentiary hearing that defendant's statement was not a product of coercion. Our review of the summary dismissal of defendant's postconviction petition is *de novo. People v. Tate*, 2012 IL 112214, ¶ 10. We first consider the sufficiency of defendant's petition.

¶ 38                                    Sufficiency of the Petition

¶ 39        The State asserts defendant's petition was insufficient to survive first-stage review for two reasons: (1) defendant has forfeited her arguments regarding counsel's ineffectiveness; and (2) defendant failed to provide any evidence in support of her claims as required by section 122-2 of the Act. We address each in turn.

¶ 40                                         *Forfeiture*

¶ 41        "The scope of the [postconviction] proceeding is limited to constitutional matters that have not been, nor could have been, previously adjudicated." *People v. Harris*, 224 Ill. 2d 115, 124 (2007). Accordingly, issues that could have been raised on direct appeal, but were not, are considered forfeited and, therefore, barred from consideration in a postconviction proceeding. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). A postconviction claim that depends on matters outside the record, however, is not ordinarily forfeited because such matters may not be raised on direct appeal. *People v. English*, 2013 IL 112890, ¶ 22; *People v. Youngblood*, 389 Ill. App. 3d 209, 214 (2009).

¶ 42        In the present case, defendant asserts two arguments regarding what she alleges was her trial counsel's ineffectiveness. The first argument, that her trial counsel failed to inform her of a 20-year plea offer, could not have been raised on direct appeal. Information regarding this claim was outside of the record, therefore, we find the argument is not forfeited. See *People v. Harris*, 206 Ill. 2d 1, 15 (2002) (finding "[t]he facts relating to this claim do not appear on the face of the original appellate record, and *res judicata* and waiver therefore do not apply in this instance"). Second, defendant asserts that trial counsel was ineffective for failing to present evidence at her suppression hearing to corroborate her claim that she was mentally and physically coerced into providing her statement to police. In that this claim is based on purported corroborative evidence of coercion which was not presented, the facts relating to this claim are outside the record. Accordingly, we will also consider this portion of defendant's claim. See *Harris*, 206 Ill. 2d at 15.

¶ 43                              *Compliance With Section 122-2 of the Act*

¶ 44        The State contends that defendant's petition was properly dismissed at the first stage as defendant failed to provide any evidence in support of her claims as required by section 122-2 of the Act. 725 ILCS 5/122-2 (West 2012). Specifically, the State points out that defendant submitted affidavits that were not notarized and, therefore, do not satisfy the pleading requirements of section 122-2. Relying on *People v. Collins*, 202 Ill. 2d 59, 66-68

(2002), the State concludes that the failure to meet the pleading requirements of section 122-2 is fatal to defendant's postconviction petition. In response, defendant claims that "the lack of notarization on the evidentiary statements attached to a *pro se* petition is a 'technicality' that would not prevent a petition from advancing to the second stage," relying on *People v. Parker*, 2012 IL App (1st) 101809, ¶ 75.

¶ 45    We begin our analysis of the State's contention by noting that the Act provides a procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. 725 ILCS 5/122-1 (West 2012). "The purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *English*, 2013 IL 112890, ¶ 22. At the first stage of a postconviction proceeding, the trial court independently reviews the petition, taking the allegations as true, and determines if it is frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). "The court is further foreclosed from engaging in any fact-finding or any review of matters beyond the allegations of the petition." *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). At this stage, a defendant "need only present a limited amount of detail in the petition" and the "threshold for survival" is "low." *Hodges*, 234 Ill. 2d at 9. A *pro se* defendant need only "allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act." *Id.* "Thus, in our past decisions, when we have spoken of a 'gist' [of a constitutional claim], we meant only that the section 122-2 pleading requirements are met, even if the petition lacks formal legal arguments or citations to legal authority." *Id.*

¶ 46    Whether defendant's postconviction claims survive the first stage of the postconviction proceedings is dependent upon whether defendant's petition conforms to the requirements of the Act. See *Collins*, 202 Ill. 2d at 66-67; *People v. Delton*, 227 Ill. 2d 247, 255 (2008). Section 122-2 of the Act requires that the petitioner either provide "affidavits, records, or other evidence" to support the petitioner's allegations *or* explain the absence of such documentation. 725 ILCS 5/122-2 (West 2012). "The purpose of the 'affidavits, records, or other evidence' requirement is to establish that a petition's allegations are capable of objective or independent corroboration." *Hodges*, 234 Ill. 2d at 10 (citing *Delton*, 227 Ill. 2d at 254). If at first-stage review the affidavits do not comply with the evidentiary requirements of section 122-2, then the petition must comply with the pleading requirements of section 122-2 by at least providing an explanation as to why the documents or affidavits are unobtainable. *Collins*, 202 Ill. 2d at 66-67. The failure to meet either of the requirements of section 122-2 justifies the petition's summary dismissal. 725 ILCS 5/122-2 (West 2012); *Delton*, 227 Ill. 2d at 255. If a postconviction petition is unsupported as required by section 122-2, then we need not consider whether the petition sets forth the gist of a constitutional claim. *Delton*, 227 Ill. 2d at 255.

¶ 47    In *Collins* our supreme court stated that the purpose of a section 122-2 affidavit is to establish that the defendant's allegations can be independently corroborated and, therefore, failure to meet the requirements of section 122-2 is enough to justify summary dismissal. *Collins*, 202 Ill. 2d at 66-67. There, the defendant filed a *pro se* petition for postconviction relief. *Id.* at 62. The only attachment to the defendant's petition was a sworn verification from the defendant that " '[a]ll the facts presented are true and correct to the best of my recollection.' " *Id.* The circuit court dismissed the defendant's petition as frivolous and

- 11 -

patently without merit. *Id.* The appellate court ultimately reversed the circuit court's dismissal of defendant's petition. *Id.* at 64.

¶ 48 Our supreme court affirmed the circuit court's dismissal of the petition, reasoning that "the failure to either attach the necessary 'affidavits, records, or other evidence' or explain their absence is 'fatal' to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal [citation]." *Id.* at 66. The court, however, expressly rejected the "defendant's contention that his sworn verification can serve as a substitute for the 'affidavits, records, or other evidence' mandated by section 122-2." *Id.* "[T]he Act itself clearly distinguishes between the sworn verification that defendant filed and the supporting 'affidavits, records, or other evidence' that defendant neglected to file." *Id.* Our supreme court stated that the purposes of sections 122-1(b) and 122-2 are "wholly distinct." *Id.* at 67. Specifically, a section 122-1(b) affidavit "like all pleading verifications, confirms that the allegations are brought truthfully and in good faith. [Citation.] The latter [section 122-2], by contrast, shows that the verified allegations are capable of objective or independent corroboration." *Id.* In upholding the circuit court's dismissal of the petition, our supreme court recognized that requiring a defendant to attach " 'affidavits, records, or other evidence' " may place an unreasonable burden on postconviction petitioners. *Id.* at 68. "This does not mean, however, that the petitioners in such cases are relieved of bearing any burden whatsoever. On the contrary, section 122-2 makes clear that the petitioner who is unable to obtain the necessary 'affidavits, records, or other evidence' must at least explain why such evidence is unobtainable." *Id.*[4]

¶ 49 The propriety of a summary dismissal of a first-stage petition based on the petitioner's failure to comply with section 122-2 of the Act was further reiterated in *Delton*, wherein our supreme court stated, "while a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent. As a result, the failure to either attach the necessary affidavits, records, or other evidence or explain their absence is fatal to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal." (Internal quotation marks omitted.) *Delton*, 227 Ill. 2d at 254-55 (quoting *Collins*, 202 Ill. 2d at 66).

¶ 50 Defendant contends that the lack of notarization of a section 122-2 affidavit is not fatal to her first-stage petition, as it is a mere technicality and, therefore, should proceed to

---

[4]In a dissent upon denial of rehearing, Justice McMorrow, joined by Justice Freeman, criticized the majority's holding in *Collins* that the defendant's failure to comply with the pleading requirements of section 122-2 by itself warranted summary dismissal of the postconviction petition. *Id.* at 79 (McMorrow, J., dissenting, joined by Freeman, J.). The dissent pointed out that under *Boclair*, the circuit court is limited at the summary dismissal stage to asking whether the petition states the "gist of a constitutional claim"; accordingly, matters of "procedural compliance," such as the failure to comply with the affidavit requirement of section 122-2, may not be considered at the initial stage of postconviction review. *Id.* at 80. In the time since the *Collins* decision was issued, however, our supreme court has expressly stated that "in our past decisions, when we have spoken of a 'gist,' we meant only that the section 122-2 pleading requirements are met, even if the petition lacks formal legal arguments or citations to legal authority." *Hodges*, 234 Ill. 2d at 9. Accordingly, in order to even reach the question of whether the petition states the gist of a constitutional claim, the pleading requirements of section 122-2 must be satisfied. See *Delton*, 227 Ill. 2d at 255.

second-stage review. In support of this position, defendant relies upon two cases; *Parker*, and *People v. Henderson*, 2011 IL App (1st) 090923, which we discuss in turn.

¶ 51     We first turn to consider *Henderson*. We note that the relevant issue in *Henderson* was whether the lack of notarized section 122-1(b) verification affidavit was a proper basis for summary dismissal at the first stage. *Id.* ¶ 21. The *Henderson* court did not consider the consequences of an unnotarized section 122-2 affidavit, as is at issue in the present case. Recognizing the distinction between sections 122-1(b) and 122-2 of the Act, the *Henderson* court stated: "Unlike the section 122-2 affidavit, which shows that the allegations can be objectively and independently corroborated, the verification affidavit requirement of section 122-1, 'like all pleading verifications, confirms that the allegations are brought truthfully and in good faith.' " *Id.* (quoting *Collins*, 202 Ill. 2d at 67). The court concluded that although any affidavit filed pursuant to the Act must be notarized, not every defect in a petition warrants summary dismissal. *Id.* ¶ 29. The *Henderson* court specifically held that "the Act allows summary dismissal only where a defect renders a petition frivolous or patently without merit. By their traditional meaning, we do not find those terms would encompass the mere lack of notarization of a *verification affidavit*." (Emphasis added.) *Id.* ¶ 34. The court reasoned that the notarization of a verification affidavit has "no relation to the substance of a defendant's alleged constitutional claim" and that "unlike a section 122-2 affidavit, a section 122-1 verification affidavit does not show that the defendant's allegations can be corroborated and is not considered when determining whether a defendant has a factual basis for his claims." *Id.* The court further explained, "since an unnotarized verification affidavit cannot render a petition frivolous or patently without merit, it cannot be condoned as a proper basis for first-stage dismissal of a postconviction petition." *Id.*[5]

¶ 52     In the present case, the State does not challenge the sufficiency of defendant's verification affidavit. Accordingly, we do not find *Henderson* to be applicable.

¶ 53     Second, defendant relies on *Parker* for the proposition that "the lack of notarization on the evidentiary statements attached to a *pro se* petition is a 'technicality' that would not prevent a petition from advancing to the second stage." In *Parker*, we considered whether the first-stage dismissal of a postconviction petition was proper because one of the two section 122-2 affidavits submitted by the defendant was unnotarized. *Parker*, 2012 IL App (1st) 101809, ¶ 73. There, the unnotarized affidavit at issue consisted of statements from a codefendant in support of the defendant's actual innocence claim. *Id.* ¶ 63. The affidavit, however, was sworn pursuant to section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2010)) and asserted that the defendant did not commit the murder and he had " 'never seen him in my life.' " *Parker*, 2012 IL App (1st) 101809, ¶ 64. The *Parker* court expressly rejected the State's argument that summary dismissal was warranted based on the lack of notarization of the section 122-2 affidavit. The *Parker* court adopted the reasoning of *Henderson*, "where we stated that we would not let a technicality prevent a *pro se* petition from advancing to the second stage." (Internal quotation marks omitted.) *Id.* ¶ 76 (quoting

---

[5]Similarly, our supreme court in *People v. Hommerson*, 2014 IL 115638, held that the trial court "may not dismiss a petition at the first stage of proceedings solely on the basis that it lacked a *verification affidavit*." (Emphasis added.) *Id.* ¶ 11. Although section 122-2 affidavits were attached to the defendant's postconviction petition, our supreme court expressly did not consider them in its decision. *Id.* ¶ 14 n.1. Accordingly, *Hommerson* is also inapplicable to the case at bar.

*People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 72). The *Parker* court did not take issue with the content of the codefendant's affidavit. *Id.* ¶¶ 83-85.

¶ 54    Although *Parker* stands for the proposition that a section 122-2 affidavit need not be notarized upon first-stage review, this court has found the lack of notarization in that instance can be a basis for summary dismissal. In *People v. Gardner*, 2013 IL App (2d) 110598, the reviewing court concluded that the affidavit requirements of section 122-1(b) are "wholly distinctive" from section 122-2 and, therefore, should be "construed independently as they serve independent purposes." *Id.* ¶ 17. In addition, the court stated "[a]lthough a petition may not be summarily dismissed for violating section 122-1(b), it may be for violating section 122-2." *Id.* This reasoning was similarly applied in *People v. Wideman*, 2013 IL App (1st) 102273, wherein we upheld the summary dismissal of a successive postconviction petition based on the fact the section 122-2 affidavit was unnotarized and failed to offer any explanation as to why the affidavits were not notarized. *Id.* ¶ 18. Had an explanation been given, "[t]he trial court would have had an opportunity to determine whether there was at least minimal compliance with section 122-2 of the Act." *Id.*

¶ 55    In contrast, the *Parker* court based its reasoning on *Henderson* wherein we held that the lack of notarization of a section 122-1(b) verification affidavit could not be the basis of a summary dismissal. *Henderson*, 2011 IL App (1st) 090923, ¶ 21. Despite the fact *Henderson* expressly distinguished between the purposes of section 122-1(b) and section 122-2 affidavits (and also discussed *Collins*), the *Parker* court failed to acknowledge the distinction between these two sections. See *id.* ¶¶ 30, 34; *Parker*, 2012 IL App (1st) 101809, ¶¶ 72-77. Our supreme court has made clear that the purpose of a section 122-2 affidavit is to "show[ ] that the verified allegations are capable of objective or independent corroboration. To equate the two [sections] is not only to confuse the purposes of subjective verification and independent corroboration but also to render the 'affidavits, records, or other evidence' requirement of section 122-2 meaningless surplusage." *Collins*, 202 Ill. 2d at 67. Accordingly, section 122-1(b) verification affidavits are readily distinguishable from section 122-2 affidavits and, therefore, we decline to follow *Parker* and will instead follow the more applicable opinions of *Collins*, *Gardner*, and *Wideman*.

¶ 56    Even if we construed the notarization requirement as a technicality, the affidavits are still insufficient to support defendant's petition. An affidavit is "a declaration, on oath, in writing, and sworn to before some person who has authority under the law to administer oaths." *People v. Gray*, 2011 IL App (1st) 091689, ¶ 13. An affidavit "should consist of factual propositions to which the affiant could testify in an evidentiary hearing." *People v. Coleman*, 2012 IL App (4th) 110463, ¶ 54. Moreover, the "affidavits and exhibits which accompany a petition must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations." *Delton*, 227 Ill. 2d at 254. If the content of an affidavit is no more than hearsay, then it is insufficient to support a claim under the Act. *Gray*, 2011 IL App (1st) 091689, ¶ 16.

¶ 57    In the present case, defendant submitted three unnotarized affidavits from herself and two letters from her mother and brother. We first address the fact that the letters are unquestionably not affidavits; they lack attestation, identifiers in the statement, factual specificity, and notarization. See *id.* ¶ 14. Further, these letters are prime examples of why affidavits are required to be notarized, as both letters consist of two pieces of paper; the top half consisting of the contents of the letter and the bottom half consisting of the date, the

typed name, and the handwritten signature of the "author." These two pieces of paper are held together with a single piece of white-colored tape, which was placed on the back of the paper and was attached to the petition as one sheet of paper. As presented, we cannot say that these letters are even capable of being sworn to or notarized in future proceedings. Accordingly, these letters fail to support defendant's petition. See *Gardner*, 2013 IL App (2d) 110598, ¶ 17 (finding the letter attached to a postconviction petition was not a valid section 122-2 affidavit).

¶ 58     We next turn to consider the three unnotarized affidavits defendant authored on her own behalf.[6] None of defendant's affidavits provide independent corroboration of the facts alleged in her petition. In fact, two of the affidavits contain hearsay statements; that the assistant State's Attorney informed her lawyer of a 20-year plea offer and that her trial counsel informed her mother and brother of a 20-year plea offer. Affidavits containing hearsay are insufficient to support a claim under the Act. *Gray*, 2011 IL App (1st) 091689, ¶ 16. Moreover, defendant could have supported her claim that trial counsel was ineffective for failing to relay to her the 20-year plea offer with an affidavit from trial counsel. Under defendant's circumstances, it is understandable that such an affidavit would be difficult to acquire. See *People v. Williams*, 47 Ill. 2d 1, 4 (1970) ("The difficulty or impossibility of obtaining such an affidavit is self-apparent."). An affidavit from trial counsel, however, was not the only means of corroboration, as defendant claims her mother and brother could corroborate the facts surrounding the 20-year plea offer but failed to obtain affidavits from either of them which would corroborate her allegation. Further, defendant's affidavits are inconsistent with the allegations of her petition. For example, defendant asserts in one affidavit that two days prior to her confession she was physically assaulted. This assertion was belied by her petition (and also the record) wherein she stated she confessed on December 27, 2005, and was hit in the head on December 26, 2005. For these reasons, we find that defendant's affidavits did not comply with section 122-2.

¶ 59     Even though none of defendant's affidavits comply with section 122-2 it does not necessarily follow that her petition warrants summary dismissal. Section 122-2 of the Act also permits a defendant to attach records or other documentation to the petition as a means of independent corroboration. 725 ILCS 5/122-2 (West 2012). Here, in support of her contention that trial counsel was ineffective for failing to present evidence of coercion at the hearing on the motion to suppress, defendant attached to her petition two pages of Officer Twohill's testimony from the motion to suppress hearing and three pages from the hearing on defendant's motion for a new trial. The excerpt of Officer Twohill's testimony consists of questions regarding defendant's identification of individuals while in the van. The testimony indicates defendant became emotional when making the identifications and seeing Peterson escorted by officers out of a residence. Accordingly, these transcript excerpts do not provide the requisite factual support for defendant's postconviction allegations of ineffective assistance of counsel which are at issue in this appeal.[7] See *Delton*, 227 Ill. 2d at 256. In

---

[6]We note that the affidavits authored by defendant were signed under penalties of perjury pursuant to section 1-109 of the Illinois Code of Civil Procedure (735 ILCS 5/1-109 (West 2012)).

[7]Defendant also attached three portions of the record to support her other claims of ineffective assistance of trial counsel which are not raised on appeal. As these claims are not raised on appeal, we decline to address those portions of the record which were attached in support of them.

addition, defendant attached excerpts of case law that she believes are relevant to her case. At this stage in postconviction proceedings, a petition need not be supported by case law. Further, attaching case law to the petition does not aid defendant in establishing independent corroboration of the facts alleged in her petition. In fact, section 122-2 prohibits citations and discussions of authorities in the petition. 725 ILCS 5/122-2 (West 2012).

¶ 60    Although defendant failed to support her petition pursuant to section 122-2, her failure may be excused if she has provided an explanation as to why the affidavits, records, or other evidence are not attached. 725 ILCS 5/122-2 (West 2012); see *Delton*, 227 Ill. 2d at 257. Defendant does not explain why she failed to comply with section 122-2. Under the circumstances of this case, we cannot excuse defendant's complete disregard for the requirements of the Act. See *Wideman*, 2013 IL App (1st) 102273, ¶ 18.

¶ 61    We conclude that defendant's petition does not contain the proper affidavits, records, or other evidence to factually support her allegations, as is required by section 122-2. Nor does the petition explain why those documents are absent, which is also required by section 122-2. Accordingly, we find that the trial court did not err in summarily dismissing defendant's postconviction petition. See *Delton*, 227 Ill. 2d at 258. Because we have determined that defendant did not properly support her petition under section 122-2, we need not consider whether defendant's petition sets forth the gist of a constitutional claim. See *id.* at 255.

¶ 62                                    CONCLUSION

¶ 63    For the reasons stated above, we affirm the judgment of the circuit court summarily dismissing defendant's first-stage postconviction petition.

¶ 64    Affirmed.